No. 12,711.

ALFRED ET AL. *v.* ESSER.

(15 P. [2d] 714)

Decided October 24, 1932.

Mr. John S. Underwood, Attorney General, Mr. Clarence L. Ireland, Attorney General, Mr. Fred A. Harrison, Assistant, for plaintiffs in error.

Mr. Foster Cline, Mr. George A. Trout, for defendant in error.

*In Department.*

Mr. Justice Moore delivered the opinion of the court.

Henry Esser recovered judgment in the sum of $887.04 in the district court of the City and County of Denver against the plaintiffs in error, state board of stock inspection commissioners, who here seek a reversal thereof contending: (1) The action is not maintainable because against the state; (2) the action is barred by statute of limitations, section 3221, C. L. '21; and (3) interest is not recoverable.

In May, 1929, plaintiff filed his complaint, containing causes of action in conversion and for money had and received, seeking to recover from defendants, members of the state board of stock inspection commissioners, the proceeds of a sale of eight steers owned by him, seven bearing his registered brand and one bearing his and

another brand, made in 1919 without notice by predecessor members of the state board.

It appears from the record that on November 28, 1919, one steer branded diamond J on its left side and c w on its left hip was found in a shipment of cattle from Northgate, Colorado, by the brand inspector at the Denver Union Stock Yards, these brands being other than that of the owner of the other cattle in the shipment, and as the shipper could not exhibit a bill of sale or other authority for the possession of said animal, it was declared an estray by the inspector and sold upon the market under the rules and regulations of the state board of stock inspection commissioners for the sum of $86.39.

It further appears that on December 24, 1919, seven steers branded diamond J on their left hips were found in a shipment of cattle from Northgate, Colorado, by the brand inspector at the Denver Union Stock Yards, this brand being other than that of the owner of other cattle in the shipment, and as the shipper could not exhibit a bill of sale or other authority for the possession of said animals, they were declared estrays by the inspector and sold upon the market, according to the rules and regulations of the state board of stock inspection commissioners for the sum of $680.65.

Henry Esser was, during the entire time involved in this controversy, the owner of the diamond J brand in Colorado. Esser obtained and introduced in evidence an assignment, made by Christian Wattenberg, owner of the registered brand c w, to him of the proceeds of the steer bearing also that brand. The plaintiff testified that he was never notified that the steers here involved had been declared estrays and sold by the state board of stock inspection commissioners. He learned about seven years later of such sale and immediately made claim for the proceeds thereof to the state board which subsequently passed a resolution allowing Esser $680.65, proceeds of the sale of seven steers, and $86.39 for the steer branded diamond J and c w. This resolution was rescinded be-

cause of advice of the attorney general that the claim was barred by the statute of limitations, section 3221, C. L. '21, and that an action thereon was not maintainable.

Mr. Roy S. Lobdell, the secretary of the state board, testified that the money from the sale of these steers which came into the possession of the commission was originally deposited in the estray fund and thereafter transferred to the brand inspection fund as provided by statute; that the estray fund "is a continuing fund made up of money derived from the sale of estrays and other cattle," and during the time involved was deposited in various banks and drew interest at the rate of one and one-half to two per cent per annum.

The statutes involved are the following sections from the Compiled Laws of 1921:

"3171. The governor shall appoint upon the passage and approval of this act, nine commissioners to be known as the state board of stock inspection commissioners all of whom shall be actual and practical stock men engaged in the live stock business in the state of Colorado. * * *"

"3217. In making any inspection of any animals as provided in this act, prior to shipment by rail or removal from the state, if any inspector shall find any animal or animals bearing marks and brands other than those of the owner of the other cattle in said shipment, and if said owner or shipper shall fail to exhibit a bill of sale or other authority for the possession of said animal or animals in said shipment, the inspector shall forthwith declare them to be estrays, and shall take possession of the same for the state board of stock inspection commissioners, and dispose of the same according to the rules and regulations prescribed by said board."

"3218. The state board of stock inspection commissioners are hereby authorized and empowered to make such reasonable rules and regulations regarding the disposition of estrays taken up by inspectors, as provided in section twenty-four (24) of this act, as may seem to said

board to be proper and just, and for the best interests of the owners of same.''

''3219. All moneys coming into the hands of the secretary of the state board of stock inspection commissioners from the sale of estray animals shall constitute and be known as the 'Estray' fund, and shall be kept in an account separate and distinct from other accounts, in conformity with regulations to be prescribed by said board. All other funds of said board, including fees collected for the inspection of cattle, shall constitute and be known as the 'Brand inspection' fund of said board, which shall be kept in conformity with the regulations to be prescribed by said board.''

''3220. Any person, persons, association or corporation establishing to the satisfaction of said stock inspection board the ownership to any estray animals which shall have been sold by said board, and the amount realized from such sale deposited in the estray fund, as herein provided, shall be forthwith paid the amount for which said animal or animals were sold.''

''3221. Any and all moneys now in the estray fund, derived from the sale of estray animals by the state board of stock inspection commissioners, or any inspector acting under the authority of said board, which has been in the possession of said board of stock inspection commissioners for six (6) years or longer from the date of sale of such estray animal or animals, and for which no valid claim has been made, shall be turned into the brand inspection fund of said board, and all claims for moneys from the estray fund made by the owners of cattle sold as estrays by said board, after the passage of this act, shall be made within three (3) years from the date of sale of the same or the same shall be forever barred and no moneys shall be paid upon claims made after three (3) years from the date of such sale. The funds so transferred from the estray fund may be used by the said board, under proper vouchers, for the prosecution of per-

sons charged with larceny of live stock and for other and general expenses of the board.''

█ 1. Is this action maintainable? In passing the statute creating the state board of stock inspection commissioners, including the sections hereinabove quoted, the legislature undoubtedly intended to protect the cattleman against loss of his cattle by wandering or theft. It most certainly did not intend to establish a procedure which would operate to enrich the state to the damage of a cattle owner whose estrayed or stolen cattle were sold under the provision thereof. Section 3220 specifically authorizes the owner to be reimbursed forthwith for cattle proven to have been owned by him and sold as estrays by the board. The mandate to forthwith reimburse such owner must necessarily include a reciprocal right to maintain an action against the members of the board in the event of a refusal to comply with the demand for reimbursement. To hold otherwise would result in the taking by an agency of the state of the cattleman's property without due process of law. The action is not against the state in its sovereign capacity to recover damages for the negligence or misconduct of its officers and cannot be held to come within the well recognized rule that a state may not be held liable for the negligence or fraud of its officers. It is an action against an agency of the state, not to recover money owned by the state, but to recover the proceeds of a sale of steers properly belonging to the plaintiff and illegally held by such agency. Accordingly we hold that the action as plead is maintainable.

██ 2. Is the claim barred by section 3221, supra? It was charged in the complaint, and the plaintiff testified, that he had no notice of the sale of the steers here involved, and first learned of it seven years later. This testimony was disputed by defendants, but the lower court, having found for the plaintiff upon sufficient and substantial evidence, its finding is here conclusive. The statutes contemplate that some sort of notice be given the

owner of cattle held as estrays. The lower court has found that none in fact was given. In these circumstances, it would be unjust to hold the statute bars a recovery.

3. Is interest allowable? It was shown by the undisputed evidence that interest was paid at the rate of one and one-half to two per cent per annum upon the proceeds of the cattle here involved and other funds held by the board. In this regard the lower court found and determined that the plaintiff was damaged in the sum of "eighty-six dollars and thirty-nine cents ($86.39), together with the interest actually received by the defendants on such amount from and after the time of the conversion of said steer to and including the time of trial herein, or the sum of thirteen dollars and sixty-five cents ($13.65). From the sale of the steers described in the third and fourth causes of action of plaintiff's amended complaint, six hundred eighty dollars and sixty-five cents ($680.65), together with interest actually received by the defendants on said amount from and after the time of the conversion of such steers, to and including the time of trial herein, or the sum of one hundred six dollars and thirty-five cents ($106.35)."

The proceeds of the sale of plaintiff's cattle were held by the state board as a trust fund to be repaid to him upon a proper demand. In claiming that this interest actually paid to it is not recoverable, the plaintiffs in error are placed in the embarrassing position of contending that they are entitled to interest from the proceeds of another's property. The lower court was justified under the facts in allowing these two interest items.

Judgment affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BUTLER concur.