Charles W. NORTON, and Ruby W. Norton; Charles W. and Ruby W. Norton, Inc., an Iowa Corporation; Investment Securities Company, an Iowa Corporation; William B. Norton, Individually, and as Custodian for Bradley L. Norton; Florence N. Bates, and Leslie W. Bates; Lucille Yedlik, and Edwin G. Yedlik; Charles Wesley Norton and Macine M. Norton; Carl J. Mealy, and Alice N. Mealy; Harold D. Norton, and Brenda S. Norton; Miriam N. Baumann, and Robert W. Baumann, Plaintiffs-Appellants,

v.

LEADVILLE CORPORATION, a Colorado Corporation, Defendant-Appellee.

No. 79CA0438.

Colorado Court of Appeals, Div. II.

Dec. 28, 1979.

Rehearing Denied Feb. 21, 1980.

Certiorari Denied May 19, 1980.

Gorsuch, Kirgis, Campbell, Walker & Grover, Stephen Klein, David S. Steefel, Denver, for plaintiffs-appellants.

Cosgriff, Dunn & French, Timothy H. Berry, Peter Cosgriff, Leadville, for defendant-appellee.

PIERCE, Judge.

Plaintiffs appeal the granting of defendant Leadville Corporation's motion for summary judgment in plaintiffs' action for violations of federal and state securities laws and for common law fraud. We affirm in part and reverse in part.

From 1971 to 1974 plaintiffs acquired in excess of 160,000 shares of stock in Leadville. As a result of these acquisitions and loans made by plaintiffs to Leadville, plaintiff Charles Norton was elected to Leadville's board of directors in July 1972. In August 1973, Leadville's attorneys resigned, citing as the reason Leadville's failure "to meet the standards of a prudent management attempting to comply with the securities laws." In October 1973, plaintiffs hired their own counsel to investigate Leadville; and in January 1974, plaintiff Norton resigned from the board of directors, declaring that plaintiffs were concerned that they "may have invested on the basis of false and misleading information and that similar false and misleading information might also be given to the investing public."

In February 1975, after the other Leadville stockholders approved a proposal which plaintiffs opposed, plaintiffs demanded payment from the corporation for the value of their stock. Upon being informed by Leadville's attorney that their shares "were worth little or nothing on February 6, 1975," plaintiffs instituted an action for an appraisal of their stock.

In May 1977, Leadville began voluntary bankruptcy proceedings. Throughout those proceedings, plaintiffs, as a major secured creditor, attempted unsuccessfully to obtain discovery of documentation concerning the value of Leadville's properties.

Plaintiffs were finally successful in obtaining discovery of this documentation in April 1978, during the course of their stock appraisal action. Based on the information contained in these documents, plaintiffs amended their complaint in the stock appraisal action to include, among other things, claims alleging common law fraud and violations of 15 U.S.C. § 77q (1976), i. e., § 17 of the Securities Act of 1933, and § 11–51–125, C.R.S.1973.

The trial court granted Leadville's amended motion for summary judgment, holding that all of the claims in plaintiffs' amended complaint were barred by the applicable statutes of limitation.

On appeal, plaintiffs contend that it was error to grant summary judgment with respect to their claims because material factual issues exist concerning when plaintiffs should have known of the alleged misrepresentations and omissions giving rise to their claims.

Section 11–51–125(5), C.R.S.1973, states that "[n]o person may sue under this section more than two years after the contract of sale." Plaintiffs contend that this statute should be construed so as to incorporate a "discovery rule" which would make the two year period begin to run from the date fraud is or should have been discovered. However, the statute specifically requires that the two year period begin to run from the time of the contract of sale.

 When the meaning of a statutory provision is plain and free from ambiguity and no absurdity is involved, the language is not subject to construction. *Hill v. Sleep Products, Inc.*, 41 Colo.App. 133, 584 P.2d 93 (1978). Here, it is undisputed that all plaintiffs' stock was purchased prior to 1975 and that plaintiffs' amended complaint asserting a claim under § 11–51–125, C.R.S.1973, was not filed until 1978, more than two years later. We therefore affirm the summary judgment for defendant on plaintiffs' claim under § 11–51–125, C.R.S.1973.

 Both parties agree that in the absence of a federal statute of limitations applicable to § 17 of the Securities Act of 1933, plaintiffs' claim under this section is governed by the Colorado statute of limitations for common law fraud actions, § 13–80–109, C.R.S.1973. That statute provides: "Bills for relief on the ground of fraud shall

be filed within three years after the discovery by the aggrieved party of the facts constituting such fraud, and not afterwards." Accordingly, the three year period begins to run when the defrauded person has knowledge of facts which would, in the exercise of proper prudence and diligence, enable him to discover the fraud perpetrated against him. *Greco v. Pullara*, 166 Colo. 465, 444 P.2d 383 (1968). Whether § 13–80–109, C.R.S.1973, bars a particular claim is therefore a fact question for the jury. *See Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970).

██ Summary judgment is appropriate only when there is no genuine issue as to any material fact. C.R.C.P. 56(c). And, in considering the motion for summary judgment, the trial court must accept the plaintiffs' pleadings as true unless the depositions and admissions on file, together with the affidavits, clearly disclose there is no genuine issue as to any material fact, with any doubts being resolved in plaintiffs' favor. *Abrahamsen v. Mountain States Telephone & Telegraph Co.*, 177 Colo. 422, 494 P.2d 1287 (1972). Applying these principles here, we agree with plaintiffs that the defendant has failed to establish a lack of disputed material facts and that summary judgment was therefore inappropriate with respect to plaintiffs' claims under § 17 of the Securities Act of 1933 and common law fraud.

Here, plaintiff Norton's affidavit alleges that defendant made misleading and deceptive statements which allayed any suspicions the plaintiffs might have had about possible securities law violations, and that defendant's opposition to plaintiffs' attempts to conduct discovery to determine defendant's true financial status prevented discovery of the alleged wrongdoing until 1978. These allegations, if true, constitute material facts regarding when the statute of limitations began to run. *See Rogers v. Rogers*, 96 Colo. 473, 44 P.2d 909 (1935). Defendant's contention that plaintiffs' close involvement with the corporate operations and membership on the board of directors gave plaintiffs sufficient knowledge to com-

mence the running of the limitations period as early as 1973 is a factual argument concerning disputed issues of material fact which cannot be summarily determined.

Accordingly, we affirm the trial court with respect to plaintiffs' claim under § 11–51–125, C.R.S.1973, reverse with respect to claims under § 17 of the Securities Act of 1933 and common law fraud, and remand to the trial court for further proceedings consistent with this opinion.

RULAND and BERMAN, JJ., concur.